1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  MUTHU SUKUMARAN, | Civil No.    14-cv-00967 BAS(JMA) |
| 12                          Plaintiff, | **ORDER:** |
| 13 | **(1)  GRANTING MOTION TO** |
| 14 | **PROCEED *IN FORMA*** |
| 15 | ***PAUPERIS* [ECF No. 2];** |
| 16            vs. | **(2)  DENYING MOTION TO** |
| 17 | **APPOINT COUNSEL** |
| | **[ECF No. 3];** |
| 18 | **(3)  DISMISSING CIVIL ACTION** |
| 19 | **AS TO CERTAIN DEFENDANTS** |
| 20  U.S. DHS/ICE-EL CENTRO, *ET AL.*, | **FOR FAILING TO STATE A** |
| | **CLAIM PURSUANT TO** |
| 21 | **28 U.S.C. § 1915(e)(2)(B)(ii);** |
| 22 | **AND** |
| 23 | **(4) DIRECTING U.S. MARSHAL** |
| 24                       Defendants. | **TO EFFECT SERVICE OF** |
| 25 | **SUMMONS AND COMPLAINT** |
| | **UPON REMAINING** |
| 26 | **DEFENDANTS PURSUANT** |
| | **TO FED.R.CIV.P. 4(c)(3) AND** |
| 27 | **28 U.S.C. § 1915(d)** |
| 28 | |

1      Sukumaran Muthu ("Plaintiff"), an immigration detainee at the U.S. Department

2  of Homeland Security's ("DHS") Immigration and Customs Enforcement's ("ICE")

3  Processing Center in El Centro, California, and proceeding pro se, has filed a civil action

4  pursuant to 42 U.S.C. §§ 1983 and 1985(3) (ECF No. 1 ("Compl.")).

5      Plaintiff claims Defendants have violated his constitutional rights to adequate

6  medical care and meaningful access to the courts, and have further "breach[ed] [a]

7  suggested promissory agreement" to provide him with a "T-Visa" or protection under the

8  "witness protection program" based on information he alleges to have provided

9  regarding international trafficking and a "ring of smugglers." *See* Compl. at pp. 4-15.

10  Plaintiff demands a jury trial and seeks an injunction and general and punitive damages.

11  *Id.* at pp. 14-15.

12      Plaintiff did not prepay the filing fees required to commence a civil action;

13  instead, he filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C.

14  § 1915(a) (ECF No. 2), as well as a Motion to Appoint Counsel pursuant to 28 U.S.C.

15  § 1915(e)(1) (ECF No. 3).

16  **I.      MOTION TO PROCEED IFP**

17      All parties instituting any civil action, suit, or proceeding in a district court of the

18  United States, except an application for writ of habeas corpus, must pay a filing fee of

19  $400.[1]  *See* 28 U.S.C. § 1914(a).  An action may proceed despite a plaintiff's failure to

20  prepay the entire fee only if the plaintiff is granted leave to proceed IFP pursuant to 28

21  U.S.C. § 1915(a).  *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).

22      "Unlike other indigent litigants, prisoners proceeding *in forma pauperis* must pay

23  the full amount of the filing fees in civil actions and appeals pursuant to the PLRA

24  [Prison Litigation Reform Act]."  *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002)

25

26      [1] In addition to the $350 statutory fee, all parties filing civil actions on or after
27  May 1, 2013, must pay an additional administrative fee of $50.  *See* 28 U.S.C. § 1914(a),
   (b); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule (eff. May
28  1, 2013).  However, the additional $50 administrative fee is waived if the plaintiff is
   granted leave to proceed IFP.  *Id.*

(citing 28 U.S.C. § 1915(b)(1); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002)). Under the PLRA, a "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).  However, "an alien detained by the INS pending deportation is not a 'prisoner' within the meaning of the PLRA," because deportation proceedings are civil, rather than criminal in nature, and an alien detained pending deportation has not necessarily been "accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." *Agyeman*, 296 F.3d at 886.

Plaintiff is a citizen of India who was taken into the custody of the DHS at ICE's El Centro Processing Center on August 20, 2011, and he claims he is subject to removal "from U.S. soil." *See* Compl. at pp. 2, 4-5,11, 28.  Therefore, because Plaintiff is not a "prisoner" as defined by 28 U.S.C. § 1915(h), the filing fee provisions of 28 U.S.C. § 1915(b) do not apply to him.  *See Agyeman*, 296 F.3d 885-86 (finding that PLRA's filing fee requirements "do not apply to an alien detainee who proceeds *in forma pauperis* . . . , so long as he does not also face criminal charges.").

Accordingly, the Court has reviewed Plaintiff's affidavit of assets and finds it is sufficient to show that he is unable to pay the fees or post securities required to maintain this action.  Therefore, his Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2) is **GRANTED**.

## II.    MOTION TO APPOINT COUNSEL

Plaintiff also requests the appointment of counsel to assist him because he is indigent, in custody, has limited access to legal resources, and little knowledge of the law. *See* Pl.'s Mot. (ECF No. 3) at p. 2.

There is no constitutional right to counsel in a civil case.  *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25-27 (1981).  Nonetheless, under 28 U.S.C. § 1915(e)(1), district courts have some limited discretion to "request" that an attorney represent an indigent civil litigant. *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th

Cir. 2004).  This discretion may be exercised only under "exceptional circumstances." *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A finding of exceptional circumstances requires "an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

The Court **DENIES** Plaintiff's Motion without prejudice because, as discussed below, it appears Plaintiff is capable of articulating the factual basis for his claims, and his likelihood of success on the merits is not at all yet clear.  *See id.*  Therefore, neither the interests of justice nor any exceptional circumstances warrant appointment of counsel at this time.  *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987); *Terrell*, 935 F.2d at 1017.

## III.   SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)

### A.   Standard of Review

A complaint filed by any person proceeding IFP is subject to *sua sponte* dismissal if it contains claims which are frivolous, malicious, or fail to state a claim upon which relief may be granted, or if it "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that the language of § 1915(e)(2)(B)(ii) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

However, while the court has an "obligation...where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it "may not supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## B.   Plaintiff's Allegations

Plaintiff's Complaint contains three separate causes of action. First, he claims Defendants Auhl, Carreno, and Chan, all medical officials at ICE's El Centro Processing Center, waited months to refer him to a specialist after he complained of "severe" right shoulder pain, and again delayed recommended physical therapy after he underwent surgery. Compl. at pp. 4-8. Plaintiff claims the post-surgical delay in physical therapy caused his shoulder to heal improperly and, as a result, he has "lost most of the function in [his] Right arm." *Id.* at pp. 6-8. Plaintiff further alleges Auhl, Carreno, and Chan delayed therapy in order to "obviate expenses." *Id.* at p. 7.

Second, Plaintiff claims Defendants Reyna, Valenzuela, Bribiesca, Ortega, and Moya, violated his right to "meaningful access-to-court" by providing an "inadequate law library" and enforcing "faulty polic[ies]." *Id.* at pp. 12-13.

Third, Plaintiff alleges Defendants Reyna, Valenzuela, and Moya "breached [a] suggestive promissory agreement" to provide him with a T-Visa as a "victim in the severe form of trafficking" or Witness Protection Program protection based on information he provided regarding a "ring of smugglers . . . connected to an existing law firm operating in the State of California." *Id.* at pp. 8-12.

### C.    42 U.S.C. § 1983 and 42 U.S.C. § 1985(3)

First, to the extent Plaintiff invokes federal jurisdiction in this matter pursuant to 42 U.S.C. §§ 1983/1985(3), (Compl. at Cover Page & p. 1), he fails to state any claims upon which relief can be granted.  The Civil Rights Act, codified at 42 U.S.C. § 1983, "provides a remedy only for deprivation of constitutional rights by a person acting under color of law of any state or territory or the District of Columbia." *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1988).   Thus, because Plaintiff alleges constitutional violations by federal, not state actors, "the only possible action is an action under the authority of *Bivens [v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)]." *Id.*; *see also Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) ("[B]y its very terms, § 1983 precludes liability in federal government actors.").

And while the Ninth Circuit has held that, unlike section 1983, section 1985 "does not require action under the color of state law," *Gillespie v. Civiletti,* 629 F.2d 637, 641 (9th Cir. 1980) (noting that "[s]ection 1985,...is derived from the thirteenth amendment and covers all deprivations of equal protection of the laws and equal privileges and immunities under the laws, regardless of its source"), Plaintiff has nevertheless also failed to state a claim pursuant to 42 U.S.C. § 1985(3).  Under § 1985(3), also known as the "Ku Klux Klan Act," "a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Id.*  Here, Plaintiff's Complaint contains no facts to plausibly suggest the existence of any "meeting of the minds" between the named defendants to violate his rights.  Nor does Plaintiff allege he was denied any constitutional right motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002).  Therefore, Plaintiff has also failed to state a claim upon which § 1985(3) relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Calhoun*, 254 F.3d at 845.

### D.   *Bivens*

Second, because Plaintiff is proceeding without counsel, and his Complaint alleges violation of the Constitution by federal actors, the Court will liberally construe his case to arise under *Bivens*, 403 U.S. at 388.  *Bivens* actions are judicially created equivalents to § 1983 actions allowing a plaintiff to sue a federal officer for civil rights violations under color of federal law.  *See, e.g., Carlson v. Green*, 446 U.S. 14, 18 (1980) (allowing *Bivens* action for Eighth Amendment violations); *Hartman v. Moore*, 547 U.S. 250, 254, 255 n.2 (2006) (describing a suit brought under *Bivens* as the "federal analog" to § 1983); *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (noting § 1983 and *Bivens* actions are the same except for the replacement of state actor under § 1983 with a federal actor under *Bivens*).

### E.   **Defendants U.S. DHS/ICE El Centro & Garzon**

To the extent Plaintiff's Complaint seeks to hold the U.S. DHS/ICE liable for alleged civil rights violations occurring at the El Centro Processing Center where he is detained, however, he cannot state a *Bivens* claim.  *Bivens* provides that "federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs for violations of their constitutional rights." *Western Center for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000); *Butz v. Economou*, 438 U.S. 478, 486 (1978).  A *Bivens* action may only be brought against the responsible federal official

in his or her individual capacity, *see Daly-Murphy*, 837 F.2d at 355, and cannot stand against a federal agency like U.S. DHS/ICE, *see FDIC v. Meyer*, 510 U.S. 471 (1994), because "the purpose of *Bivens* is to deter *the officer*," not the agency. *Id.* at 485 (emphasis in original).  Indeed, the Supreme Court has held that "[a]n extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself." *Id.* at 486.

Moreover, because Plaintiff seeks damages under *Bivens* against John A. Garzon, an "ICE Field Officer Director" based only on claims that "[h]e's the one who [makes] ultimate findings" and has "approval" over the other defendants, *see* Compl. at p. 2, he also fails to allege any plausible claim for relief.  *See Iqbal,* 556 U.S. at 678.  This is primarily because "vicarious liability is inapplicable to *Bivens*... suits," *id.* at 676, and secondarily because Plaintiff has failed to allege any additional factual content to show that Garzon "through [his] own individual actions,...violated the Constitution." *Id.*; *see also OSU Student Alliance v. Ray*, 699 F.3d 1053, 1073 n.15 (9th Cir. 2012) ("*Iqbal* holds simply that a supervisor's liability, like any government official's liability, depends first on whether he or she breached the duty imposed by the relevant constitutional provision.").

## F.    Access to Courts

To the extent Plaintiff alleges that Defendants Reyna, Valenzuela, Bribiesca, Ortega, and Moya's "inadequate law library and faulty polic[ies]," including one that limits a detainee's possession of "legal materials" to no more than "four (4) inches high," "create barriers to meaningful access-to-court," *see* Compl. at p. 12, he also fails to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.

Prisoners "have a constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts." *O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1160 (9th Cir. 2003) (applying *Bounds* and *Lewis* to pretrial detainee's access to courts claims).

The Ninth Circuit has "traditionally differentiated between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011). With respect to the right of assistance, the Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The right to litigation assistance, however, is limited to the tools prisoners need in order to pursue non-frivolous legal attacks on "their sentences, [either] directly or collaterally," or "to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996); *Silva*, 658 F.3d at 1102. To establish a violation, Plaintiff must allege facts sufficient to show that the shortcomings in the prison's library or legal assistance program resulted in actual injury and hindered his efforts to pursue a non-frivolous legal claim challenging his sentence or conditions of confinement. *Lewis*, 518 U.S. at 351-55. An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348; *see also Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994); *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989) ("An 'actual injury' consists of some specific instance in which an inmate was actually denied access to the courts.") (quotations and citations omitted); *Keenan v. Hall*, 83 F.3d 1083, 1093 (9th Cir. 1996).

With respect to the right to litigate without active interference, "the Supreme Court has held that the First Amendment right to petition the government includes the right to file other civil actions in court that have a reasonable basis in law or fact." *Silva*, 658 F.3d at 1102 (citations and quotations omitted). "This right does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from erecting barriers that impede the right of access of incarcerated persons." *Id.* (citations and quotations omitted).

Here, Plaintiff fails to identify any specific act or policy attributable to Defendants Reyna, Valenzuela, Bribiesca, Ortega, or Moya that precluded his pursuit of a non-frivolous direct or collateral attack upon either a criminal conviction or sentence or the conditions of his current confinement, or actively interfered with his right to litigate. *See Lewis*, 518 U.S. at 355 (right to access to the courts protects only an inmate's need and ability to "attack [his] sentence[], directly or collaterally, and...to challenge the conditions of [his] confinement"); *Silva*, 658 F.3d at 1102. Therefore, he has not alleged the "actual injury" required to support an access to courts violation. *See id*. at 353 n.4 (noting that the actual injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an absolute deprivation of access to all legal materials"). In addition, Plaintiff must also, but has failed to, describe the non-frivolous nature of any "underlying cause of action, whether anticipated or lost." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

In short, because Plaintiff has failed to allege that "a complaint he prepared was dismissed," or that he was "so stymied" by Defendants' actions that "he was unable to even file a complaint," direct appeal, or a petition for writ of habeas corpus that was not "frivolous," his access to courts claim fails. *Lewis*, 518 U.S. at 351; *Christopher*, 536 U.S. at 416 ("[L]ike any other element of an access claim[,]... the predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.").

Moreover, Plaintiff's complaints related to the general deficiencies of the El Centro Detention Center's law library, *e.g.*, its "old" computers, lapsed Lexis Nexis subscription, and copy machines that "skip[] some pages" and chop off page numbers, *see* Compl. at pp. 12-13, without some actual injury alleged to have resulted from them, also fail to state a plausible access to courts claim. *Iqbal*, 556 U.S. at 678. Law libraries and legal assistance programs are only the means of ensuring access to the courts; they "are not ends in themselves." *Lewis*, 518 U.S. at 351. Because there is no "abstract,

freestanding right to a law library or legal assistance, [Plaintiff] cannot establish relevant actual injury simply by [alleging] that his...law library or legal assistance program is subpar in some theoretical sense." *Id.*; *Blaisdell v. Frappiea*, 729 F.3d 1237, 1244 (9th Cir. 2013) ("[Access-to-courts rights] are tethered to principles of Article III standing.").

### G.   "Breach of Suggestive Promissory Agreement" Claims

Plaintiff also claims Defendants Reyna, Valenzuela, and Moya "concurred" that he would be granted a T-Visa or witness protection based on information he furnished "about a ring of smugglers or unlawful enterprise." *See* Compl. at pp. 8-9.  Plaintiff claims these Defendants "breached" this "promissory agreement," and "together elected to defraud [him] instead." *Id.* at pp. 9-11.  Plaintiff alleges this behavior amounts to an "intentional infliction of emotional distress." *Id.* at p. 10.

To the extent Plaintiff seeks monetary damages against Defendants Reyna, Valenzuela, and Moya for acts alleged to have been taken in their individual capacities, and the Court has liberally construed those claims to arise under *Bivens*, his allegations of a breach of a promissory agreement or the infliction of emotional distress fail to state a plausible claim upon which *Bivens* relief can be granted. *Iqbal*, 556 U.S. at 678.[2]  In *Bivens,* the Supreme Court recognized the availability of a federal cause of action against individual government officers for *constitutional* deprivations, not ordinary common law tort claims. *Bivens*, 403 U.S. at 397; *see also Arnold v. United States*, 816 F.2d 1306, 1311 (9th Cir. 1987) (holding that *Bivens* claim failed because Plaintiff alleged only state-law tort claims, not constitutional tort claims).

In addition, to the extent Plaintiff seeks to compel Defendants Reyna, Valenzuela, and Moya to grant him a T-Visa or somehow clear his participation in the "Witness Protection Program," a *Bivens* suit does not authorize such relief. *See Lee v. Holder*, 599 F.3d 973, 975-76 (9th Cir. 2010) (finding that USCIS has "sole jurisdiction" over

---

[2] To the extent these claims might be liberally construed to arise under the Federal Tort Claims Act ("FTCA"), as opposed to *Bivens*, they still fail to state a claim because the United States is the only proper party defendant in an FTCA action. *See Kennedy v. U.S. Postal Service*, 145 F.3d 1077, 1078 (9th Cir. 1998).

Plaintiff's claims of eligibility for a U-Visa pursuant to 8 C.F.R. § 214.14(c)(1));
*Aguirre-Palacios v. Doe No.* 1, 2014 WL 584265, at *5 (S. D. Cal. Feb. 11, 2014)
(finding that the "Court's general federal question jurisdiction pursuant to *Bivens* does
not extend so far as to confer further jurisdiction over questions of Plaintiff's eligibility
for a U–Visa under 8 U.S.C. § 1101(a) (15)(U)"); *see also* 8 U.S.C.
§ 1101(a)(15)(T)(i)(I) (providing for the issuance of a T-Visa in cases where "the
Secretary of Homeland Security, or...the Secretary of Homeland Security, in consultation
with the Attorney General, [has] determine[d]...that [an alien] (I) is or has been a victim
of a severe form of trafficking in persons."); 8 C.F.R. § 214.11(b) (governing
requirements for USCIS to qualify an alien for a T-Visa under the Victims of Trafficking
and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000)); *see
also United States v. Dann*, 652 F.3d 1160, 1163 n.2 (9th Cir. 2011) ("For a T-Visa to
be issued...[DHS] agents or prosecutors have to submit a letter to Immigration Services
certifying that the visa applicant has been the victim of a 'severe form of trafficking in
persons,' and the visa applicant must also cooperate in the prosecution of the
trafficker."); 18 U.S.C. § 3521(a)(1) (providing that "[t]he Attorney General may provide
for the relocation and other protection of a witness or a potential witness for the Federal
Government or for a State government in an official proceeding concerning an organized
criminal activity or other serious offense"); *Garcia v. United States*, 666 F.2d 960, 962-
64 (5th Cir. 1982) (finding the Witness Protection Program statutory scheme does not
create a protected property interest but rather authorizes the Attorney General to
determine, in his discretion, when, to whom, and for how long to provide protective
facilities); *Mirmehdi v. U.S.* 689 F.3d 975, 982 (9th Cir. 2011) (determining the
availability of a *Bivens* remedy requires a court to determine whether there is any
alternative, existing process for protecting the plaintiff's interest; if there is, the inquiry
stops and there is no *Bivens* remedy).

///

///

### H.    Inadequate Medical Care Claims

Finally, to the extent Plaintiff claims Defendants Auhl, Carreno, and Chan acted with "deliberate indifference" to his "severe" shoulder pain by delaying his referral to a specialist and access to physical therapy recommended by his surgeon, in order to "obviate expenses" in violation of the Eighth Amendment, *see Compl.* at pp. 4-8, the Court finds these allegations do contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted).

Because Plaintiff is an immigration detainee, his medical care claims against the El Centro Processing Center's medical personnel, strictly speaking, are rooted in the Fifth Amendment's Due Process clause, not the Eighth Amendment's prohibition on cruel and unusual punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535-37 & n.16 (1979). However, "[w]ith regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citations and quotations omitted). Under the Eighth Amendment, prison officials are considered "deliberately indifferent" if they "know[] of and disregard[] an excessive risk to inmate health and safety." *Colwell v. Bannister*, __ F.3d __, 2014 WL 3953769, at *3 (9th Cir. Aug. 14, 2014) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quotation omitted)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

Therefore, while the Court has found Plaintiff's Complaint fails to state a claim as to any other named Defendant, it will order U.S. Marshal service upon Defendants Auhl, Carreno, and Chan on Plaintiff's behalf. *See Lopez*, 203 F.3d at 1126-27; 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and

perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (providing that "service be effected by a United States marshal, deputy United States marshal, or other officer specially appointed by the court . . . when the plaintiff is authorized to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.").

## IV.   CONCLUSION & ORDER

Good cause appearing, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2) is **GRANTED**.

2.   Plaintiff's Motion to Appoint Counsel (ECF No. 3) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that:

3.   All claims alleged against Defendants U.S. DHS/ICE EL CENTRO, GARZON, REYNA, VALENZUELA, BRIBIESCA, MOYA, and ORTEGA are **DISMISSED WITHOUT PREJUDICE** for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4.   The Clerk is **DIRECTED** to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon the remaining Defendants, AUHL, CHAN, and CARRENO, and will forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants.[3]  In addition, the Clerk shall provide Plaintiff with a certified copy of this Order and a certified copy of his Complaint and summons so that he may serve each Defendant.  Upon receipt of this "IFP Package," Plaintiff is directed to complete the Form 285s as completely and accurately as possible, and to return them to the United States Marshal according to the instructions provided by the Clerk in the letter

---

[3] Because Plaintiff is suing an officer or employee of the United States and/or one of its agencies, he must also serve the United States. *See* Fed. R. Civ. P. 4(i)(1), (3). The Clerk is hereby directed to include in Plaintiff's IFP package two separate copies of this Order, summons, Plaintiff's Complaint, and additional blank USM Form 285s for Plaintiff's use in serving the United States via the United States Attorney for the Southern District of California and the Attorney General of the United States in Washington, D.C.  *See* Fed. R. Civ. P. 4(i)(1)(A)(i), (B).

accompanying his IFP package.  The U.S. Marshal is thereafter directed to serve a copy of the Complaint  and summons upon Defendants as directed by Plaintiff on the USM Form 285s.  All costs of service will be advanced by the United States.  *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5.     Defendants are thereafter **ORDERED** to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a).[4]  *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility  under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond).

6.     Plaintiff must serve upon the Defendants or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading or other document submitted for consideration of the Court.  Plaintiff must also include with the original paper to be filed with the Clerk of the Court a certificate stating the manner in which a true and correct copy of any document filed was also served on Defendants, or counsel for Defendants, and the date of such service.  Any paper received by the Court which has not been filed with the Clerk or which fails to include a Certificate of Service will be disregarded.

**IT IS SO ORDERED.**

**DATED:  August 29, 2014**

Hon. Cynthia Bashant
United States District Judge

---

[4]  Plaintiff is cautioned that "the sua sponte screening and dismissal procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a] defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).